UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATCO TOOLS CORPORATION, | ) | CASE NO. 5:19-CV-1009 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| CARY G. URQUHART, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of plaintiff Matco Tools Corporation ("Matco") for summary judgment (Doc. No. 37 ["MSJ"]). Defendant Cary G. Urquhart ("Urquhart") did not file an opposition to the motion, and the date for filing such a response has passed. For the reasons discussed herein, Matco's unopposed motion for summary judgment is GRANTED.

I. BACKGROUND

Matco markets and sells professional tools, tool boxes, service equipment, and related goods and services. (Doc. No. 1 (Verified Complaint ["Compl."]) ¶ 7.) In connection with the marketing of its products and services, Matco has developed a distinctive business system—known as the Matco® Business System ("Business System")—that utilizes trademarks, tradenames, service marks, and related marks and commercial symbols. (*Id.*) Applying these mechanisms, Matco sells its products through approximately 1,711 independent Matco Distributors throughout the United States. (*Id.* ¶ 8.) These registered distributors operate principally from mobile store trucks, purchasing products from Matco and reselling them to

customers in a specific geographic area. (*Id*. ¶ 11.) Each distributor is required to enter into an agreement that governs the distribution of Matco products. (*Id.*)

Before selling Matco's products, its authorized distributors participate in a two-week training course in Stow, Ohio, where distributors learn to utilize the benefits of the Business System. They also receive field training on Matco's Business System. (*See* Doc. No. 37-3 (Declaration of Michael Swanson ["Swanson Decl."]) ¶¶ 12, 17.) Additionally, distributors also receive a "List of Calls and Potential Customers" ("List of Calls"), which is "developed by Matco based on surveys of specific areas with a concentration of professional mechanics, technicians, and other service professionals who need quality tools to perform their jobs and agreed to have a Matco® Distributor come to their shop/business." (*Id*. ¶¶ 13, 14.) This list is updated regularly by Matco employees and is maintained in such a way that a distributor may call on customers from the list in the most efficient manner to "minimize driving time and maximize sales." (*Id*. ¶¶ 7, 13, 15.)

Matco undertakes measures to protect the confidentiality of its customer information. The Business System application is password protected, with a default password assigned upon installation that can be changed by each individual Matco Distributor to their own selected password. (Doc. No. 37-4 (Declaration of Kevin Fanning ["Fanning Decl."]) ¶ 3.) A distributor must log in using his own password to view the information relative to his distributorship, and a distributor may not access other Matco Distributors' information. (*Id*. ¶¶ 3–5.)

Urquhart entered into his Matco Distributorship Agreement on July 8, 2014. (Compl. ¶ 17; Doc. No. 1-3 (Distributorship Agreement ["Dist. Agr."]).) Prior to becoming a Matco Distributor, Urquhart had no experience in sales or in running his own business. (Doc. No. 37-2

(Excerpts from Video Conference Deposition of Cary G. Urquhart ["Urquhart Dep."]) at 349[1].) In addition to agreeing to be bound by the terms of the Distributorship Agreement, Urquhart also entered into an Installment Promissory Note, dated August 4, 2014, in favor of Matco in the principal amount of $83,000.00. (Doc. No. 1-3 (Installment Promissory Note ["Note"]) at 75–76.) The purpose of the Note was to finance Urquhart's purchase of a starter inventory of Matco products. The Note was secured by a Security Agreement between Urquhart, as the debtor, and Matco, as the secured party. (Doc. No. 1-3 ["Security Agreement"] at 72–74.)

The Distributorship Agreement contained several restrictions to which Urquhart agreed to be bound. Pursuant to ¶ 1.2, Urquhart agreed to operate his Matco Distributorship only within his designated territory, which consisted of those locations identified on his daily "List of Calls." (Dist. Agr. ¶ 1.2; Doc. No. 1-3 (List of Calls) at 95–99.) Urquhart's approved territory included customers located in the general areas of Terrell, Forney, Seagoville, Dallas, Balch, Springs, and Mesquite, Texas. (Compl. ¶ 20; List of Calls at 95–99.) The Distributorship Agreement further restricted Urquhart by limiting him to "only sell Products and other merchandise approved by Matco and purchased from Matco (with the exception of trade-in merchandise), and will not sell any products, tools, equipment or other merchandise which are competitive with any of the Matco Products, except for items that [were] traded-in by [his] Customers, without Matco's prior written consent." (Dist. Agr. ¶ 3.2.) Finally, under ¶ 7.2, Urquhart further agreed that he would "not take any action which is adverse to Matco's right, title or interest in the Marks," that nothing in the Distributorship Agreement would give him any right, title, or interest in the marks other than the right to use them in accordance with the terms of the Distributorship Agreement,

---

[1] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

and that any goodwill resulting from his use of the marks would "inure solely to the benefit of Matco." (Dist. Agr. ¶ 7.2.)

Paragraph 11.1 of the Distributorship Agreement addressed termination. Urquhart had the right to terminate the agreement, with or without cause, by giving 45 days' prior written notice to Matco. (*Id.* ¶ 11.1) Matco had the right to terminate the agreement immediately by giving Urquhart written notice of termination if, among other things, Urquhart abandoned his Matco Distributorship and/or was involved in any conduct which materially impaired the goodwill associated with Matco, its Business System, or the marks associated with its products. (*Id.* ¶ 11.3.) The term "abandoned," as it was used in ¶ 11.3, was defined as "conduct of the Distributor, including acts of omission as well as commission, indicating the willingness, desire or intent of the Distributor to discontinue operating the Distributorship in accordance with the Business System and the standards and requirements set forth" in Matco's manual and the Distributorship Agreement. (*Id.* ¶ 13.6(A).)

The Distributorship Agreement also contained certain post-termination restrictions. For example, under ¶ 11.9.3, Urquhart agreed that he would not, for a year following the termination of his distributorship:

> sell or attempt to sell any [Matco products] or any products the same as or similar to the [Matco products] to (i) any Customer who purchased one or more [Matco products] from Distributor during the twelve (12) month period immediately preceding the [termination of the distributorship], or (ii) any [potential Matco customer], located on, or identified in, the Distributor's List of Calls, as such list may have been amended as provided for in this Agreement and in accordance with Matco's policies, if Distributor had visited or made one or more sales calls to such [potential Matco customer], List of Calls, or person or business identified on the List of Calls [during that time period].

(*Id.* ¶ 11.9.3.) Immediately following termination of the distributorship, Urquhart was also

required to, among other things, pay Matco all amounts owed including interest; provide Matco with customer lists and other information relating to the distributorship's customers; and return to Matco all operating manuals, software, catalogs, brochures, pamphlets, and other marketing materials and destroy all electronic versions of such information and provide verification of such destruction to Matco. (*Id*. ¶ 11.6.)

The record reflects that by the second week in March 2019, Urquhart had effectively stopped buying tools from Matco, even though his truck still bore the trademarked Matco logos, and he was still stopping at his customers on the List of Calls into April 2019. (Doc. No. 37-5 (Declaration of Timothy Grunst ["Grunst Decl."]) ¶ 3.) On or about March 25, 2019, Matco District Manager Timothy Grunst learned from Urquhart that he was considering abandoning his Matco Distributorship to sell competing products. (*Id*. ¶ 5.) Grunst also obtained a copy of a receipt, dated March 19, 2019, that was issued by Urquhart to one of Matco's customers that identified his business as "Cary Urquhart GearWrench." (*Id.* ¶ 6.)

Based upon this information, Grunst believed that Urquart was using the Matco name and reputation to compete with Matco, "essentially playing both sides for his own benefit and to Matco's detriment." (Grunst Decl. ¶ 7.) Grunst expressed this opinion to one of Matco's customers on Urquhart's route, and told the customer that he "wanted to protect the customer's relationship with Matco." (*Id*.)

Given Urquhart's purported abandonment of his Matco Distributorship, Matco sent Urquhart a Notice of Immediate Termination on April 29, 2019. (Compl. ¶ 37; Doc. No. 1-7 ["Notice"] at 120.) Urquhart returned to Matco a signed "separation agreement" on April 30, 2019. (Urquhart Dep. at 360; Doc. No. 37-2 ["Separation Agreement"] at 363.) Nevertheless,

Urquhart continued to sell non-Matco tools to customers on his Matco List of Calls after his Matco Distributorship ended. (Urquhart Dep. at 358.) At the time the distributorship was terminated, Urquhart also owed $44,914.83 in principal and interest on the Note, and $9,440.10 for tools and other products purchased for resale under the Distributorship Agreement. (Grunst Decl. ¶ 9.)

Notwithstanding the termination of the distributorship, Urquhart continued to use Matco's marks in the operation of his competing GearWrench business. In deposition testimony, Urquhart conceded that, for two days after the distributorship's termination, he continued to display the Matco name and registered mark on his mobile store truck while selling competitive products to the customers on his List of Calls. (Urquhart Dep. at 359[2]; *see* Swanson Decl. ¶ 26, referencing Doc. No. 1-6 (Apr. 12, 2019 Photograph of Urquhart's truck with Matco logo).)

On May 6, 2019, Matco filed suit in federal court. In its verified complaint, Matco raised two claims of breach of contract: Count I addressed Urquhart's alleged violation of the post-termination non-solicitation clause, and Count II addressed Urquhart's alleged violation of his post-termination obligations relating to the return of Matco property. Matco also raised claims for federal trademark infringement (Count III), misappropriation of goodwill (Count IV), misappropriation of trade secrets (Count V), and breach of promissory note and security agreement (Count VI). Matco sought injunctive relief and monetary damages. Urquhart answered the complaint, and brought counterclaims for bad faith, unfair competition, abuse of process, defamation *per se*, defamation *per quod*, false light invasion of privacy, and tortious

---

[2] Specifically, Urquhart testified that on or about May 1st or 2nd, 2019, he removed all of the Matco logos from his truck by peeling the decals off the exterior of the vehicle. (*Id.*)

interference with business relationships. (Doc. No. 15 (Answer and Counterclaims ["Ans & CC"]).)

On July 8, 2019, following a hearing on Matco's request for preliminary injunctive relief, the parties entered into a final stipulation regarding the customers and potential customers Urquhart could and could not solicit and the customer information Urquhart could retain on his laptop. (Doc. No. 25 (Stipulation).) Matco filed the present summary judgment motion on November 11, 2019. As previously indicated, the motion is unopposed.[3]

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An opposing party may not rely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1).

Even when, as here, there is no opposition to the motion, the Court must still consider the supporting evidence submitted by the movant and determine whether the movant has met its burden. *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013) (citing *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380–81 (6th Cir. 2011) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not

---

[3] A mediation was scheduled in this case before Magistrate Judge Burke on September 24, 2019. Because Urquhart failed to appear for the mediation, it was canceled. (Minute Order, Sept. 24, 2019.) The minutes reflect that defense counsel reported that he had been unable to reach his client regarding the mediation. (*Id.*) On October 16, 2019, the Court granted defense counsel's motion to withdraw, after counsel reported that Urquhart had ceased to respond to correspondences or otherwise assist in the defense of the case. (Doc. No. 36 (Order); *see* Doc. No. 34 (Motion to

responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.")).

### III. LAW AND ANALYSIS

#### A. Count One—Breach of Contract (Non-Solicitation Clause)

Count One of the complaint sounds in breach of contract. Under Ohio law, a plaintiff establishes a successful contract claim by showing (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006); *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (citing *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio 1994)).

According to Matco, the record is clear that, for several weeks prior to and after the termination of his distributorship, Urquhart operated a competing business in violation of the non-solicitation/non-compete clause in the Distributorship Agreement.[4] (Mot. at 336.) A covenant against competition is enforceable if it seeks to protect a legitimate business interest and is reasonable. *Economou v. Physicians Weight Loss Ctrs. of Am.*, 756 F. Supp. 1024, 1031 (N.D. Ohio 1991). "Under Ohio law, a non-compete covenant is reasonable if it (1) is no greater than is required for the protection of the employer; (2) does not impose undue hardship on the employee[;] and (3) is not injurious to the public." *Handel's Enters., Inc. v. Schulenburg*, 765 F. App'x 117, 123 (6th Cir. 2019).

---

Withdraw).) In its Order, the Court cautioned Urquhart that "failure to participate in this case . . . may result in the entry of an adverse judgment against him." (*Id*. at 323.)

[4] Pursuant to ¶ 11.9.2, Urquhart was prohibited from selling competing products during the term of the Distributorship Agreement. (Dist. Agr. ¶ 11.9.2; *see also id*. ¶ 3.2.)

Matco had legitimate business interests that were protected by the non-solicitation covenant, including the need to preserve goodwill associated with its registered names and marks and to protect against unfair competition. As set forth above, Matco developed a unique Business System for marketing and selling its products and services, including the development of trademarks and service marks, and has invested substantial time, money, and other resources in promoting its name and solidifying its relationships with its customers. (Doc. No. 37-3 (Declaration of Michael Swanson ["Swanson Decl."]) ¶¶ 4, 7–11.) As a Matco Distributor, Urquhart had exposure to and training involving Matco's Business System, and was also given access to the List of Calls generated by Matco employees. (*Id.* ¶¶ 12–15.) Given this access, Matco had a legitimate interest in protecting its goodwill and preventing franchisees like Urquhart from using this valuable information to engage in unfair competition. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 549 (6th Cir. 2007) (applying similar Michigan law and finding non-compete reasonably prevents franchisees from using knowledge of franchisor's business systems to steal customers); *Dealer Specialties, Inc. v. Car Data 24/7, Inc.*, No. 1:15-cv-170, 2016 WL 5341797, at *6 (S.D. Ohio Sept. 23, 2016) (franchise non-compete covenant protected legitimate interests of safeguarding goodwill and business reputation and preventing consumer confusion) (citing, among authority, *Economou*, 756 F. Supp. at 1032).

The Court also finds that the scope of the restrictive covenant is reasonable. The clause prohibited Urquhart from soliciting business from the List of Calls as that term was defined in the Distributorship Agreement. Such customer-based restrictions are permitted under Ohio law, as they protect existing customer relationships, while permitting the former franchisee to pursue

other business opportunities.[5] *See Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706 (S.D. Ohio 2006) ("Under Ohio law, customer restrictions may substitute for a geographic restriction.") (citing *Premix, Inc. v. Zappitelli*, 561 F. Supp. 269 (N.D. Ohio 1983)). Further, courts routinely approve as reasonable non-compete covenants of one year or longer. *See Certified Restoration*, 511 F.3d at 549 (approving two-year prohibition); *Dealer Specialties*, 2016 WL 5341797, at *6 (collecting cases upholding covenants of two years); *Economou*, 756 F. Supp. at 1034 (approving one-year limitation period). Accordingly, the Court finds that there existed a valid and enforceable contract, and the first element of Matco's contract claim is satisfied.

From the record, it is clear that the remaining three elements of Matco's contract claim are also met. Matco's performance is demonstrated by its permitting Urquhart to operate a Matco Distributorship and providing him with the training and inventory necessary for the distributorship's operation. It is also evident from the record that Urquhart breached the non-solicitation covenant by soliciting Matco customers from the List of Calls. (*See, e.g.*, Doc. No. 37-7 (Mar. 19, 2019 Invoice from "Gary Urquhart GearWrench") at 382; Doc. No. 1-5 (similar) at 115.) As a result of this breach, Matco suffered damages in the form of lost profits. As these facts are not disputed by any evidence in the record, there is no genuine issue of material fact as to whether Urquhart breached the non-solicitation covenant, and Matco is entitled to judgment as a matter of law on Count One.

---

[5] Under the terms the covenant, Urquhart remains free to sell any brand of tools to any customers anywhere in the world, as long as he does not solicit or sell to his former Matco customers on his List of Calls who purchased from Urquhart during the preceding 12 months. (*See* Swanson Decl. ¶ 25; Dist. Agr. ¶ 11.6.)

### B. Count Two—Breach of Contract (Post-Termination Obligations)

While Matco makes passing reference to its claim in Count Two for breach of post-termination obligations, it does not argue that there is record evidence to support a finding that Urquhart violated his post-termination obligations unrelated to the non-solicitation covenant. Further, the Court notes that the parties' July 8, 2019 stipulation resolved all issues relative to the information Urquhart was permitted to retain, including the information on his laptop. Because Matco represents that all claims for injunctive relief were resolved by the entry of the stipulated injunction (*see* Mot. at 324 n.1), the Court finds that Count Two has been rendered moot.

### C. Count Three—Trademark Infringement

To succeed on the merits of its trademark infringement claim, Matco must prove: (1) it owns a registered trademark; (2) Urquhart used the mark in commerce; and (3) Urquhart's use was likely to cause confusion. *Marco's Franchising, LLC v. Soham, Inc.*, 365 F. Supp. 3d 891, 894–95 (N.D. Ohio 2019) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). Matco has met these elements. It is undisputed that Matco owns numerous federal registrations for "Matco Mark" and related marks. (*See* Compl. ¶ 9.) Registration of a trademark is *prima facie* evidence that the registrant owns the trademark and that it is valid. 15 U.S.C. § 1115(a). Moreover, while the record establishes that Urquhart abandoned his Matco Distributorship and began operating as GearWrench, Matco has come forward with unrebutted evidence that Urquhart continued to display the Matco marks while operating his business in the industry. (Swanson Decl. ¶ 26, citing record.) This continued use after the termination of the distributorship was likely to cause confusion. *See Marco's Franchising*, 365 F. Supp. 3d at 895 ("A plaintiff can establish 'likelihood of confusion' by showing 'proof of continued,

unauthorized use of an original trademark by one whose license to use the trademark has been terminated.'") (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997)); *see also Dunkin' Donuts Franchised Rests. LLC v. N. Thakkar, Inc.*, No. 1:08-cv-245-SSB-TSB, 2009 WL 10679563, at *4 (S.D. Ohio June 9, 2009) (noting that a franchisor can establish likelihood of confusion by proving that the franchisee operated as a "holdover" franchisee by continuing to use the marks after the franchise has been terminated) (citations omitted).

### D. Count Four—Misappropriation of Good Will

In Count Four of the Complaint, Matco raised a separate claim for misappropriation of goodwill. While Matco offers argument, supported by record evidence, for its entitlement to lost profits associated with Urquhart's breach of the Distributorship Agreement, it offers no argument or record support for a separate award for loss of goodwill. Accordingly, the Court awards no damages for loss of goodwill. *See Kinetico, Inc. v. Indep. Ohio Nail Co.*, 482 N.E.2d 1345, 1355 (Ohio Ct. App. 1984) (noting that while it is "conceivable that there can be damages for goodwill and lost profits," no award for lost goodwill should be made unless it is adequately supported by record evidence, including expert testimony).

### E. Count Five—Misappropriation of Trade Secrets

In Count Five, Matco alleged that Urquhart has been unjustly enriched by his misappropriation of Matco's confidential proprietary trade secrets, in particular, its customer information comprising customer lists and contact information. (Compl. ¶¶ 91–104.) Chapter 1333 of the Ohio Revised Code permits a plaintiff to recover damages when a defendant has misappropriated the plaintiff's trade secrets, either by acquiring the trade secrets through

improper means, or, as pertinent here, using the trade secrets without the express or implied consent of the owner of the trade secrets. Ohio Rev. Code § 1333.61(B); *see Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 182 (Ohio 1999) ("Misappropriation of trade secrets is a recognized tort in Ohio for which damages may be obtained.") A plaintiff's information is protectable as a trade secret if it "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and it "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ohio Rev. Code § 1333.61(D).

The Ohio Supreme Court has recognized that "listings of names, addresses, or telephone numbers that have not been published or disseminated, or otherwise become a matter of general public knowledge, constitute trade secrets if the owner of the list has taken reasonable precautions to protect the secrecy of the listing to prevent it from being made available to persons other than those selected by the owner to have access to it in furtherance of the owner's purposes." *Fred Seigel Co.*, 707 N.E.2d at 862. The record reflects that Matco takes reasonable precautions to protect the secrecy of its customer lists and customer information (*see* Fanning Decl. ¶¶ 3–5), a fact that Urquhart conceded in his deposition.[6] (Urquhart Dep. at 353–54 [acknowledging that the information on the List of Calls he received could not be obtained online]; *id*. at 355-56 [acknowledging that he would not disclose the List of Calls because it had

---

[6] As further evidence of Matco's efforts to protect the secrecy of its customer lists, Matco cites the Distributorship Agreement, wherein Urquhart agreed that he would not, during the term of the agreement or thereafter, "communicate, divulge or use for the benefit of any other person or entity any confidential information, knowledge or know-how concerning the methods of operation of a Matco Distributorship which may be communicated to [him] by any employees of Matco, or which arises by virtue of [the] Agreement." (Dist. Agr. ¶ 9.)

13

value in being kept confidential].) Because Matco has established that its Lists of Calls contain trade secrets entitled to protection under Ohio law, and because the record demonstrates that Urquhart relied on these trade secrets when he continued to call on customers on the list without Matco's permission, Matco is entitled to judgment as a matter of law on Count Five.

### F. Damages—Lost Profits

In its summary judgment motion, Urquhart seeks an award of compensatory damages in the form of lost profits and interest.[7] The general rule under Ohio law is that "lost profits may be recovered by the plaintiff in a breach of contract action if: profits were within the contemplation of the parties at the time the contract was made, the loss of profits is the probable result of the breach of contract, and the profits are not remote and speculative and may be shown with reasonable certainty." *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 466 N.E.2d 883, 887 (Ohio 1984); *Rhodes v. Rhodes Indus., Inc.*, 595 N.E.2d 441, 448 (Ohio Ct. App. 1991) (holding that, "[i]n order for a plaintiff to recover lost profits in a breach of contract action, the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty[]") (citing *Gahanna v. Eastgate Props., Inc.*, 521 N.E. 2d 814 (Ohio 1988)); *see also Kinetico*, 482 N.E.2d at 1350 (holding that a plaintiff can only be compensated for damages for breach of contract for an "amount that is established by the evidence with reasonable certainty"). "An explanation of how that sum was determined is required. Lost profits must be substantiated by calculations based on facts available or in evidence, otherwise they are speculative and

---

[7] In its complaint, Matco also requested preliminary and permanent injunctive relief. Matco acknowledges that its claims for injunctive relief "were resolved by the entry of [the] stipulated injunction entered by the Court on July 8, 2019 and are no longer pending" (Mot. at 324 n.1.)

14

uncertain." *Rhodes*, 595 N.E.2d at 448 (noting that there must be "more than a conclusory statement as to the amount of lost profits").

Here, Matco looks to recover the actual profits lost during the 16-week period from March 19, 2019 (the date of the "Cary Urquhart GearWrench" receipt) to July 8, 2019 (the date of the stipulated injunction). (Mot. at 341[8].) It appears from the record that an award of actual lost profits was at least within the scope of the damages contemplated by the parties. While the Distributorship Agreement specifically prohibited a recovery of *future* lost profits (along with punitive, exemplary, incidental, indirect, special or consequential damages), it permitted recovery "of any actual damages sustained" by the non-breaching party. (Dist. Agr. ¶ 12.8.)

As to the amount, Matco relies on the fact that Urquhart purchased a weekly average of $5,308.00 in products from Matco for resale to the Matco customers in Urquhart's territory, and Matco realized profits of 50%, or a weekly average of $2,654.00, from Urquhart's sales. (Grunst Decl. ¶ 4.)[9] Accordingly, in the sixteen weeks from Urquhart's cessation of purchases to the filing of the stipulated injunction, Matco alleges that it suffered actual damages, in the form of lost profits, in the amount of $42,464.00. The Court finds this figure to have been determined with reasonable certainty as it is "rooted in concrete and uncontested historical fact." *See Volunteer Energy Servs., Inc. v. Option Energy, LLC*, 579 F. App'x 319, 324–25 (6th Cir. 2014) (relying on annual historical gas usages and the expected profits realized on those sales to calculate lost profits).

---

[8] Matco notes that, had Urquhart more fully participated in this action (including in discovery), it might have been able to identify additional damages resulting from Urquhart's misconduct. (*Id*.) Nevertheless, Matco indicates that it will accept as damages those lost profits it can establish based on the record as it exists. (*Id.*)

[9] As the district manager for Urquhart's region, Grunst had access to information pertaining to Urquhart's distributorship and, therefore, has personal knowledge relative to Urquhart's product purchases. (*See* Grunst Decl. ¶¶ 1–2.)

Matco argues that the amount of $42,464.00 also represents an appropriate measure of damages for Urquhart's trademark infringement. Monetary recovery for violations of the Lanham Act is provided for by 15 U.S.C. § 1117. Pursuant to § 1117(a), a plaintiff aggrieved by a defendant's trademark infringement may recover the defendant's profits, any damages sustained by the plaintiff, and the costs of the action. *See Broan Mfg. Co., Inc. v. Associated Distrib., Inc.*, 923 F.2d 1232, 1235 (6th Cir. 1991). "Section 1117(a) grants a district court a great deal of discretion in fashioning an appropriate remedy in cases of trademark infringement." *U.S. Structures, Inc.*, 130 F.3d at 1191; *see La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 342 (6th Cir. 2010). Moreover, an award of damages for both breach of contract and trademark infringement does not constitute an impermissible double award where the damages are directed at two different "sets of wrongs[.]" *La Quinta Corp.*, 603 F.3d at 344 (quoting *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562 (11th Cir. 1986)). Here, given Urquhart's separate violation of the non-solicitation covenant and his infringement of Matco's marks, the Court finds that awards of damages for breach of contract and trademark infringement are appropriate.

It is true, as Matco suggests, that actual lost profits can be recovered as damages for trademark infringement. *See also* 15 U.S.C. § 1117(a)(2) (plaintiff in a trademark action may recover, among other things, "any damages sustained by the plaintiff"). But Matco seeks to recover damages under § 1117(a) for the entire time Urquhart was competing with Matco in violation of the non-solicitation covenant, when the record only supports a finding that Urquhart *infringed* on Matco's marks for two days (April 29, 2019 to May 1, 2019) between the time he was advised that his Matco Distributorship was canceled and the date he removed the Matco

16

decals from his truck. (*See* Urquhart Dep. at 359.) Accordingly, the Court finds that a representative portion of the total of lost profits—or $765.12—properly reflects an appropriate allocation of lost profits attributed to trademark infringement.[10]

Matco maintains that any amount awarded in damages under the Lanham Act should be trebled, pursuant to 15 U.S.C. § 1117(a), because the trademark infringement was willful. (Mot. at 342.) A defendant's infringement is willful if he "had knowledge that [his] actions constitute an infringement." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007) (quoting *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006)). "A defendant's continued infringement after notice of his wrongdoing is probative evidence of willfulness." *Id*. The April 29, 2019 termination letter demanded that Urquhart "take such actions as are necessary to comply with [his] post-termination obligations set forth in the Distributorship Agreement, including but not limited to the obligations set forth in Paragraphs 11.6 and 11.9.3." (Doc. No. 1-7 at 120.) Paragraph 11.6, in turn, requires a former distributor to "immediately cease using all of the Marks and the Business System[.]" (Dist. Agr. ¶ 11.6.) It is undisputed that Urquhart did not remove the logos from his vehicle until two days later, and that he continued to visit Matco customers with his Matco mobile truck during this albeit brief time period. (Urquhart Dep. at 359; Swanson Decl. ¶ 26.) Under these circumstances, the Court finds that the infringement was willful and exercises its discretion to award treble damages in the amount of $2,295.36.

---

[10] The sixteen-week period from which the lost profits of $42,464.00 were calculated comprised 111 days. Two days of lost profits amounts to $765.12.

## G. Count Six—Breach of Promissory Note and Security Agreement

Matco also seeks to recover on the Note. There is no dispute that Urquhart breached his obligations under the terms of the Note and Security Agreement. The record reflects that Urquhart failed to repay the Note, and a total of $44,914.83 in principal and interest is still owed. (Grunst Decl. ¶ 9.) Urquhart also owes Matco $9,440.10 for various amounts incurred under the Distributorship Agreement. (*Id*.) Accordingly, in addition to damages resulting from Urquhart's misconduct, Matco is entitled to a further award of $54,354.93 in damages on the Note and under the Distributorship Agreement, with interest running at the applicable rates from the date of judgment until paid in full.[11]

## H. Urquhart's Counterclaims

Matco also seeks summary judgment on Urquhart's counterclaims. In Count I, Urquhart alleges that Matco engaged in bad faith in bringing an action for misappropriation of trade secrets because it knew that "none of the information that it alleged was 'misappropriated' can legitimately be regarded as a trade secret under applicable law." (Ans. & CC ¶ 18; *see id*. ¶¶ 16, 19.) In a similar vein, Urquhart alleged in Count II that Matco's known reliance on information that did not qualify as protectable trade secrets constituted malicious prosecution. (*Id*. ¶ 25.) In light of the Court's ruling herein that Matco is entitled to judgment, as a matter of law, on its misappropriation of trade secrets claim, the record cannot also support a contrary finding that the misappropriation of trade secrets claim was brought in bad faith or for some other improper purpose. Further, because the Court has found that Matco brought meritorious claims to protect

---

[11] Interest on the Note runs at 8.75% per annum, and interest runs on the other amounts under the Distributorship Agreement at the rate of 22.5% per annum. (Doc. No. 1-3 at 75; Dist. Agr. ¶ 11.6.)

its trade secrets, trademarks, and to enforce its rights under the Distributorship Agreement—and there is no record evidence suggesting that this action was perverted to accomplish some ulterior purpose—Matco is also entitled to judgment on Count III (abuse of process). (*See* Ans. & CC ¶¶ 30–34.)[12]

Counts IV, V, VI of the Answer and Counterclaims all appear to center around Grunst's April 2019 conversation with a Matco customer relating to the fact that Urquhart was attempting to "play both sides" by continuing to rely on Matco trademarks while selling GearWrench products. (*See* Ans. & CC, Count IV (defamation *per se*) ¶¶ 36–43, Count V (defamation *per quod*) ¶¶ 45–47, Count VI (false light invasion of privacy) ¶¶ 49–54.) Because the undisputed record facts demonstrate that Urquhart was simultaneously using Matco trademarks while he sold GearWrench products to Matco customers, the statement was truthful. Accordingly, the statement cannot support a defamation or false light claim. *See* Ohio Rev. Code § 2739.02 (truth is an absolute defense to defamation); *Welling v. Weinfeld*, 866 N.E.2d 1051, syllabus (Ohio 2007) (false light claim requires proof that the actor had knowledge or recklessly disregarded the *falsity* of the publicized matter).

Urquhart's final counterclaim alleges tortious interference with business relationships (Ans. & CC (Count VII) ¶¶ 56–61.) But the record is clear that any interference between Urquhart and any actual or prospective business relationship arose because Matco was protecting its rights in its trade secrets and its rights under the non-solicitation covenant of the Distributorship Agreement. Under Ohio law, "[o]ne is privileged purposely to cause another not

---

[12] Under Ohio law, the elements of the tort of abuse of process are "(1) that the legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, ¶ 1 syllabus (Ohio 1994).

to perform a contract, or enter into or continue a business relation, with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction." *Ament v. Reassure Am. Life Ins. Co.*, 905 N.E.2d 1246, 1258 (Ohio Ct. App. 2009). Because any interference by Matco was privileged, the counterclaim for tortious interference fails.

Based upon the undisputed record, the Court finds that Matco is entitled to judgment, as a matter of law, on Urquhart's counterclaims.

## IV. CONCLUSION

For all of the foregoing reasons, Matco's summary judgment motion is GRANTED, judgment in favor of Matco is entered on the claims in the complaint and the counterclaims are DISMISSED with prejudice. The Court further AWARDS Matco the following: (1) $42,464.00 in damages for breach of contract; (2) $2,295.36 in damages for trademark infringement; (3) $44,914.83 in damages for breach of the Note, plus interest at the rate of 8.75% per annum; and (4) $9,440.10 for expenses owed under the Distributorship Agreement, plus interest at the rate of 22.5% per annum. By separate order, the Court will set a briefing schedule for Matco's application for attorney fees.

**IT IS SO ORDERED**.

Dated: January 22, 2020

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**